# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 28, 2008

Charles R. Fulbruge III
Clerk

No. 06-40426

ROBERT Z. HERNANDEZ, JR.

Plaintiff - Appellant

v.

ARTHUR H. VELASQUEZ; STEVEN R. SWIFT; LAURENCE P. CHING;
AGRELLO VILLAREAL; E. FRANCO; H. BARRERA; M.K. MCCLEARY;
ALBERT DELEON; WILLIAM J. DUGGER; MICHAEL P. GEERDE;
RONDA L. CAMBY; JEFFREY E. NEWMAN; DONALD R. WILSON

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and WIENER and CLEMENT, Circuit Judges.

PER CURIAM:

Robert Z. Hernandez, Texas prisoner # 837364, brought this § 1983 action against Defendants, alleging violations of his Eighth Amendment and due process rights. The district court granted summary judgment to all Defendants, and Hernandez appeals. We affirm.

## BACKGROUND

In March 2002, Texas Department of Criminal Justice ("TDCJ") officials received information that two rival Hispanic gangs, the Texas Syndicate ("TS") and the Raza Unida ("RU") were planning a gang war. Security Threat Group

("STG") officers in each prison unit were ordered to compile lists of all known, suspected, and affiliated TS and RU members. In late March 2002, RU members assaulted and killed a TS member at the Polunsky Unit, and lockdowns were ordered for all known or suspected TS and RU members and affiliates. These lockdowns were not punitive in nature, but were for the safety of the suspected gang members and others in the prison system.[1]

At that time, Robert Hernandez was incarcerated at the Darrington Unit, serving a life sentence for capital murder. Prior to his lockdown he was classified as a minimum custody, State Approved Trusty III inmate living in the general prison population. In April 2002, Hernandez was identified by a Darrington STG officer as a suspected TS member and was placed in lockdown status. This custodial assignment was based on a "screen" in Hernandez's file indicating he had been a suspected TS member since June of 2001. The STG also had received a handwritten communication from Hernandez dated April 3, 2002, in which Hernandez admitted he was a TS "helper" in the past, though he claimed he had never become a full-fledged "member" and had since withdrawn from the TS completely.

Hernandez claims that, beginning in July 2002, he was denied all outdoor and out-of-cell exercise privileges. He remained in lockdown status while prison officials investigated suspected gang members and worked to defuse tensions between the rival gangs. In November 2002, a search of Hernandez's regular cell turned up evidence suggesting a possible TS association. Prison officials found a letter mentioning a TS member, a note from the TS member, and addresses of

---

[1] The STG officer explained in his affidavit, "It was believed that if an inmate was even suspected of associating with TS or RU, that the rival gang would assault them."

confirmed TS members. According to the STG officer, this was not enough to confirm Hernandez as a TS member, and as Hernandez was already classified as a suspected TS member, nothing was done with the new information. Hernandez remained in lockdown until June 2003, when he met with the STG officer to ask that questionable information be removed from his file. At that time the STG officer determined that the initial "screen" linking Hernandez to the TS actually applied to another inmate surnamed Hernandez. Robert Hernandez was removed from lockdown, and his record was cleared of the suspected TS status.

Hernandez alleges that during lockdown he was confined to a cell measuring 5' x 9', which he usually shared with another inmate. He was allowed to leave his cell only for showers, medical appointments, and family visits. Defendants presented evidence at summary judgment that prisoners on lockdown are allowed indoor recreation in the "dayroom," but the evidence does not show that Hernandez himself was ever allowed this opportunity. Prison officials did provide Hernandez with information on how to perform in-cell exercises. Nonetheless, Hernandez claims that due to his confinement his "muscles have allowed to atrophy — stiffening up and he has lost his range of movement and flexibility." Hernandez also complains he suffered from depression.

During his time on lockdown status, Hernandez filed administrative grievances, arguing that he was not a TS member and asking to be returned to the general prison population. TDCJ officials responded to these grievances, advising that Hernandez was properly on lockdown for safety and security

reasons.[2] Nevertheless, Hernandez contends he was provided with no hearing or review, either prior to or during lockdown, in violation of his due process rights.

Hernandez filed this lawsuit on June 13, 2003,[3] alleging he was placed on lockdown status in violation of his due process rights, and that the denial of outdoor and out-of-cell exercise constituted cruel and unusual punishment in violation of the Eighth Amendment. Defendants filed a motion for summary judgment, which the district court granted as to the Eighth Amendment claims. The district court denied the motion for summary judgment on the due process claims, noting that Defendants had failed to include this issue in their motion for summary judgment. With the permission of the court,[4] Defendants filed a second motion for summary judgment on the due process claims. The district court granted this motion, adopting the report of the magistrate judge. This appeal followed.

---

[2] For example, in late 2002 defendant E. Franco responded to a letter from Hernandez, stating, in part, "You will be released when the lock-down is lifted should you not be validated as a TS member. You are in lockdown status to protect your safety and the safety of others. . . . I have reviewed your file and found enough evidence to support your suspected status." Another grievance review from May 2002 bears the handwritten note, "Lock up due to Hispanic race." This is not, as the district court seemed to infer, an explanation of why prison officials placed Hernandez on lockdown. Rather it is a summary of Hernandez's attached grievance, alleging that he had been placed on lockdown solely because he is Hispanic.

[3] At the time Hernandez filed his complaint, he was still on lockdown status.

[4] Defendants explained to the district court that they initially failed to brief the due process claim because they believed the magistrate judge had limited Hernandez's claim to Eighth Amendment issues.

## STANDARD OF REVIEW

This court reviews the district court's grant of summary judgment de novo. Berquist v. Wash. Mut. Bank, 500 F.3d 344, 348 (5th Cir. 2007). Summary judgment is appropriate if the submissions show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(c). When deciding whether a fact issue exists, we review the evidence and the inferences drawn from it in the light most favorable to the nonmoving party. Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co., 336 F.3d 410, 412 (5th Cir. 2003). Even if this court disagrees with the reasons given by the district court, it may affirm a grant of summary judgment on any grounds supported by the record and presented to the court below. Berquist, 500 F.3d at 349; Leverette v. Louisville Ladder Co., 183 F.3d 339, 342 (5th Cir. 1999).

## DISCUSSION

### I.    Eighth Amendment

Hernandez claims the denial of outdoor and out-of-cell exercise for thirteen months constituted cruel and unusual punishment under the Eighth Amendment to the Constitution.[5]   We read his complaint primarily as a challenge to the conditions of his confinement, and address it first under that standard. To maintain this action under the Eighth Amendment, Hernandez must meet two requirements.   First, he must show that his confinement resulted in a

---

[5] While this circuit has noted in the past that "deprivation of exercise per se does not violate the cruel and unusual punishment clause," Miller v. Carson, 563 F.2d 741, 751 n.12 (5th Cir. 1977); see also Wilkerson v. Maggio, 703 F.2d 909, 912 n.5 (5th Cir. 1983), it has also noted that denial of exercise may constitute an "impairment of health" actionable under the Eighth Amendment.  See Miller, 563 F.2d at 751 n.12.

deprivation that was "objectively, sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation and citation omitted). It is well settled that "the Constitution does not mandate comfortable prisons," and that prison conditions may be "restrictive and even harsh" without running afoul of the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 347, 349 (1981); see also id. at 347 (noting that such conditions are "part of the penalty that criminal offenders pay for their offenses against society"). Nonetheless, conditions may not be "grossly disproportionate to the severity of the crime warranting imprisonment." Id. The Supreme Court has defined a "sufficiently serious" deprivation under the Eighth Amendment as the denial of "the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quoting Rhodes, 452 U.S. at 347).

Assuming Hernandez can show a sufficiently serious deprivation, he also must show that prison officials acted with "deliberate indifference" to his health or safety. Id. This follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Id.; see also id. at 837 ("The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. This knowledge requirement is subjective: The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

We conclude that Hernandez cannot show deliberate indifference as required by Farmer because there is no record evidence he was ever placed at "substantial risk of serious harm." At summary judgment there was evidence on both sides as to the nature of Hernandez's discomfort. Defendants presented expert testimony that Hernandez's records revealed no complaint of muscle disorder. Defendants' exhibits also included Hernandez's grievance forms and medical requests, along with the prison officials' responses, which reference the same symptoms Hernandez recites in his complaint. For his part, Hernandez presented no evidence at summary judgment, though the allegations in his verified complaint may be considered competent evidence insofar as they comply with the requirements of Federal Rule of Civil Procedure 56(e). King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994). Assuming the evidence creates a fact issue as to whether Hernandez suffered from muscle atrophy, stiffness, loss of range of motion, and depression, there is nonetheless no indication these conditions posed a substantial risk of serious harm. The district court properly concluded there was no genuine issue as to whether Hernandez suffered a "serious illness or injury" sufficient to constitute an Eighth Amendment violation. See Estelle v. Gamble, 429 U.S. 97, 105 (1976).

It is not entirely clear from Hernandez's complaint that he is also alleging an impairment of health claim.[6] But he does allege medical symptoms resulting from his lockdown confinement, and as he is proceeding pro se, we construe his pleadings liberally. Id. at 106. If his complaint is read as alleging an impairment of health, Hernandez still must make the two-prong showing required by

---

[6] Indeed, Hernandez acknowledges in his complaint that he was receiving medical treatment for the symptoms allegedly resulting from his lack of exercise.

Farmer. In the specific context of a health impairment claim, the facts of a case must "clearly evince" the prisoner's serious medical need and the prison officials' deliberate indifference to it. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985) ("The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants."); see also Estelle, 429 U.S. at 106. Merely negligent diagnosis or treatment of a medical condition does not state a claim under the Eighth Amendment. Estelle, 429 U.S. at 106. Rather, there must be "deliberate indifference, which results in substantial harm." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).

Hernandez has not shown that prison officials failed reasonably to address his medical needs. The Defendants' summary judgment evidence shows that prison officials systematically responded to Hernandez's complaints with treatment. Hernandez initially presented no documentary evidence, but after the court granted the Defendants summary judgment on the Eighth Amendment claims, Hernandez filed a motion to reconsider. Attached to this motion were several sick call requests Hernandez submitted during lockdown complaining of muscle soreness, stiffness, and loss of range of motion.[7] These sick call requests also bear notations from medical staff showing that they responded to Hernandez timely. These forms and other evidence in the record document that medical personnel responded to each of Hernandez's requests, treating his back pain with heat packs, conducting an x-ray, advising Hernandez to take naproxen and ibuprofen for soreness, and recommending exercises for soreness and

---

[7] Though it appears the district court never ruled on the motion to reconsider, the unexcused failure to present available evidence at the time of summary judgment is a valid reason for denying a motion for rehearing. ICEE Distribs., Inc. v. J&J Snack Foods Corp., 445 F.3d 841, 847 (5th Cir. 2006).

stiffness. Viewing this evidence in the light most favorable to Hernandez, it does not show that Defendants wantonly disregarded his medical needs. Rather, it shows that Hernandez was provided with medical care as he requested it. For this reason as well, he cannot show "deliberate indifference," and the district court's judgment on his Eighth Amendment claim is affirmed.

## II. Due Process

Hernandez also claims his lockdown without a hearing violated his rights to due process. To maintain this due process challenge, Hernandez must establish that his transfer to lockdown deprived him of a liberty interest protected by the Fourteenth Amendment. Meachum v. Fano, 427 U.S. 215, 223 (1976). But generally speaking, a prisoner has no liberty interest in his custodial classification.[8] This court has repeatedly affirmed that "[p]rison officials should be accorded the widest possible deference" in classifying prisoners' custodial status as necessary "to maintain security and preserve internal order." McCord v. Maggio, 910 F.2d 1248, 1251 (5th Cir. 1990); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2005). And in the specific context of administrative lockdown, we have clearly held that "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim." E.g., Pichardo v. Kinker, 73 F.3d 612, 612-13 (5th Cir.

---

[8] Wilkerson v. Stalder, 329 F.3d 431, 435-36 (5th Cir. 2003); Moody v. Baker, 857 F.2d 256, 257-58 (5th Cir. 1988); see also Wilkinson v. Austin, 545 U.S. 209, 221 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.").

1996) (affirming dismissal of claim that lockdown for suspected gang affiliation violated due process).[9]

Only when a prisoner demonstrates "extraordinary circumstances" may he maintain a due process challenge to a change in his custodial classification. Id. In other words, segregated confinement is not grounds for a due process claim unless it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Cases where segregated confinement is sufficiently "atypical" to implicate a due process liberty interest involve circumstances much harsher than those presented here. In Wilkerson v. Stalder, this court held that due process might have been violated where the plaintiffs had been kept on lockdown status for 30 years. 329 F.3d at 436 (remanding for determination whether such confinement was "atypical" under Sandin). In another case, the Supreme Court held that transfer to the Ohio "Supermax" facility implicated a liberty interest, in part because conditions there were "more restrictive than any other form of incarceration in Ohio." Wilkinson v. Austin, 545 U.S. 209, 214 (2005). The Wilkinson Court noted that at the Supermax facility, "almost all human contact is prohibited." Id. at 223. Ohio Supermax prisoners are kept in single cells with solid metal doors that prevent communication from one cell to another; prisoners take all their meals alone in their cells rather than in a common area; and "opportunities for visitation are rare" and are conducted through glass walls. Id.

---

[9] See also Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (placement in administrative segregation based on allegedly erroneous gang-member status was not a "deprivation of a constitutionally cognizable liberty interest"); Harper v. Showers, 174 F.3d 716 (5th Cir. 1999) (placement of prisoner on lockdown under 24-hour observation did not implicate due process).

at 214, 223-24. Ohio Supermax inmates spend 23 hours a day alone in their cells, where a light remains on at all times. Id. at 224. The Supreme Court further noted that confinement at the Supermax facility was indefinite, and otherwise eligible inmates were disqualified for parole consideration. Id. These conditions and others were sufficiently extraordinary that the Supreme Court concluded prisoners had a liberty interest in avoiding assignment to the Supermax facility. Id.

The thirty-year confinement in Wilkerson and the extreme conditions in Wilkinson are distinguishable from the present facts. Here, Hernandez has not shown that his lockdown posed an atypical or significant hardship. The conditions he complains of — confinement to a shared cell for twelve months with permission to leave only for showers, medical appointments, and family visits — are comparable to, if not less severe than those found unactionable in other cases.[10] As the Seventh Circuit noted in a similar case, non-disciplinary lockdown is by no means an atypical prison experience:

> Every state must have somewhere in its prison system single-person cells in which prisoners are sometimes confined not because they have misbehaved but simply because the prison has no other space, wishes to protect some prisoners from others, wishes to keep prisoners isolated from one another in order to minimize the risk of

---

[10] See Harper, 174 F.3d at 717 (no due process claim where inmate claimed he was placed in lockdown "in cells next to psychiatric patients who scream, beat on metal toilets, short out the power, flood the cells, throw feces, and light fires;" was often "moved into filthy, feces-smeared cells;" and was deprived of "cleanliness, sleep, and peace of mind."); Martin v. Scott, 156 F.3d 578, 579 n.1, 580 (5th Cir. 1998) (segregated prisoner's complaints that his recreation and visitation time were restricted, that he was denied certain personal items, and that he was handcuffed every time he left his cell were "far from extraordinary"); Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (prisoner's 15-month (and at the time, potentially indefinite) lockdown for suspected rape of a prison guard was not an atypical or significant hardship).

> riots or other disturbances, wishes to prevent the spread of disease, and so forth.

Wagner v. Hanks, 128 F.3d 1173, 1176 (7th Cir. 1997) (Posner, C.J.). Temporary lockdown designed to prevent gang-related violence is to be expected as an ordinary incident of prison life. Viewing the facts in the light most favorable to Hernandez, his assignment to lockdown was well "within the range of confinement to be normally expected" for a prisoner serving a life sentence for capital murder. Sandin, 515 U.S. at 487. Accordingly, he has not alleged a deprivation of a cognizable liberty interest. The district court's grant of summary judgment to Defendants on this claim was proper.

## CONCLUSION

For the aforementioned reasons, the judgment of the district court is AFFIRMED.