**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 15, 2009

Charles R. Fulbruge III
Clerk

No. 08-50484

WILFORD HARALSON

Plaintiff–Appellant

v.

GILBERT CAMPUZANO; WARDEN DAWN E GROUNDS; VALENCIA
POLLARD; EXIQUIO GARZA; KENNETH L DEAN; SUSAN SIMMS

Defendants–Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:07-CV-00001

Before JONES, Chief Judge, and PRADO and HAYNES, Circuit Judges.

PER CURIAM:[*]

Appellant Wilford Haralson appeals, *pro se*, the district court's grant of
summary judgment in favor of Appellees Gilbert Campuzano, Dawn Grounds,
Valencia Pollard, Exquisio Garza, Kenneth Dean, and Susan Sims. Appellant
sued under the Americans with Disabilities Act (the "ADA") and under 42 U.S.C.
§ 1983, alleging violation of his First, Eighth, and Fourteenth Amendment
rights. Appellant claims that Appellees violated his rights by detaining him in

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

the infirmary unit, amounting to solitary confinement, and depriving him of exercise and any kind of human interaction or entertainment, which caused him physical and psychological damage. Because Appellant has not raised a genuine issue of material fact on any of his claims, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant is an inmate in the Hughes Unit of the Texas Department of Criminal Justice, Correctional Institutions Division ("TCDJ"). Appellant suffers from respiratory papillomatosis with dysplasia. His disease causes recurring cancerous growths on his vocal cords, which led to his admittance to the infirmary wing of the Hughes Unit in June 2006.

While in the infirmary wing, Appellant's recreational privileges were limited to watching two hours of television per week. The prison allowed Appellant fifteen to thirty minutes of walking in the hall of the infirmary wing each day, but Appellant claims that the guard often forgot to let him out. Appellant had access to the same reading material as the rest of the prison. Appellant could not attend a college class in which he enrolled before being admitted to the infirmary wing, and he was not given a refund of his $120 enrollment fee. Appellant filed numerous grievances during this time, seeking more recreation time and outdoor recreation, but prison officials denied all grievances.

Appellant received Interferon and oxygen treatment while in the infirmary wing. According to prison officials, oxygen tanks create security threats in the general population, requiring Appellant to remain in the infirmary wing. Appellant used a wheelchair on occasion during his stay in the infirmary. By November, Appellant had stopped eating, did not get out of bed, and became

dizzy when he stood. Dr. Roy Reid predicted that Appellant had less than six months to live. Dr. Reid prescribed Prozac to treat depression, although he was unsure whether cancer or depression had caused Appellant's symptoms.

By January 2007, Appellant's muscles had atrophied from lack of exercise, leading Dr. Reid to recommend moving Appellant from the infirmary wing so that he could exercise and regain strength. Appellant's rehabilitation ended and on January 23, 2007 he was discharged from the infirmary wing after signing a form approving the release.

Appellant filed this suit on January 3, 2007, but Appellees were not served until January 22, 2007. Appellant included as defendants Appellees Campuzano, the regional director of TDCJ; Grounds, warden of the Hughes Unit; Pollard, practice manager of the infirmary wing; Garza and Dean, assistant wardens of the Hughes Unit; and Sims, the principal of the Hughes Unit school. Appellant alleged that Appellees discriminated against him on the basis of his disability, in violation of the ADA, and that by confining him in the infirmary wing for seven months, Appellees acted with deliberate indifference to a substantial risk of serious harm in violation of the Eighth Amendment. Appellant claimed that the lack of exercise and isolation caused his mental and physical health to deteriorate and that he suffered from back pain, neck pain, headaches, and joint pain. Appellant also alleged that Appellees violated his First Amendment rights. Appellant alleged that he was coerced into approving his release from the infirmary wing and that Appellees ordered his release in retaliation for the grievances he had filed and this lawsuit. Appellant sought damages and an injunction ordering that inmates in the infirmary unit be provided the same amount of out-of-cell time and television privileges as other

minimum custody inmates.

Appellant later moved to amend his original complaint to include claims against other parties. The district court ruled that granting the motion would prejudice Appellees and that Appellant should instead bring the claims in a separate action. Appellant also moved to compel production of various documents. The district court denied the motion after the Appellees fulfilled their initial disclosure requirements under Federal Rule of Civil Procedure 26.

The district court granted Appellees' motion for summary judgment. The district court found that Appellant did not have standing to seek injunctive relief because he was no longer in the infirmary and he could show no concrete and continuing injury. The district court found that Appellant's claim that he may be reassigned to the infirmary was too speculative. The court also found that Appellant had made conclusory allegations against Appellees based on their supervisory roles and that the individuals against whom he alleged personal specific actions were not party to the suit. The court granted summary judgment with respect to Appellant's ADA claims because individual defendants cannot be held personally liable for damages under the ADA. The court also held that Appellant had not shown he was disabled as defined by the ADA, and that even if he was disabled, the restrictions placed upon him were based not on his disability, but on safety and security concerns. The court also found that Appellant had not shown that Appellees were aware of or ignored any risks to Appellant's health or safety, and therefore did not violate the Eighth Amendment. Appellant moved for reconsideration of the court's order under Federal Rule of Civil Procedure 59(e) and for injunctive relief. The court denied both motions. Appellant appeals the final judgment, the denial of injunctive

relief, the denial of his motion for reconsideration, and the denial of his motion to amend the complaint.

## II. DISCUSSION

We review the "grant of summary judgment *de novo* under the same standard applied by the district court." *Floyd v. Amite County Sch. Dist.*, 581 F.3d 244, 247 (5th Cir. 2009) (citation omitted). "Summary judgment is appropriate when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fact questions are viewed in the light most favorable to the nonmoving party and questions of law are reviewed *de novo*." *Id*. at 247–48.

## A.    Prospective Relief

Appellant seeks an injunction requiring Appellees and other Texas prison officials to provide as much recreation time for inmates in the infirmary wing as those in the general population. Appellant argues that he has standing to pursue his claim for injunctive relief because, although he is no longer housed in the infirmary, he still receives treatment there several times a week. Additionally, because his disease is incurable, Appellant claims that he will probably be admitted to the infirmary again. Appellant's argument that he will at some point be transferred back to the infirmary wing is essentially an argument for application of the capable of repetition, yet evading review exception to mootness.

"In order for a plaintiff to have sufficient standing under Article III, that plaintiff must show that: he has suffered or will suffer an injury, his injury is traceable to the defendant's conduct, and a favorable federal court decision will likely redress the injury." *Samnorwood Indep. Sch. Dist. v. Tex. Educ. Ag.*, 533

F.3d 258, 264–65 (citing *Bennett v. Spear*, 520 U.S. 154 (1997) (footnote omitted)). Under the capable of repetition, yet evading review exception, Appellant must show "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Fed. Elec. Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (internal quotation omitted).

Appellant has not shown that any future stays in the infirmary would be too short to be fully litigated and he has not shown a reasonable expectation that he will be subjected to the same treatment again. The transfer rendered his request for prospective relief moot. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (transfer from unit rendered prisoner's claims for declaratory and injunctive relief moot); *see also Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991) (same). The possibility that Appellant will be transferred back "is too speculative to warrant relief." *Herman*, 238 F.3d at 665. We find that Appellant lacks standing to seek injunctive relief.

## B. Eighth Amendment Claim

Appellant claims that the denial of out-of-cell exercise and other recreational activity for seven months while in the infirmary constituted cruel and unusual punishment in violation of the Eighth Amendment.[1] Specfically, Appellant argues that Appellees acted with deliberate indifference to his health

---

[1] Appellees do not dispute that Appellant has met the physical injury requirement for suits by prisoners. *See* 42 U.S.C. § 1997e (e)("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."). We assume, without deciding, that Appellant's showing of back pain, neck pain, headaches, and joint pain are sufficient to meet this requirement.

and safety by confining him to the infirmary wing in what amounted to solitary confinement, which caused harm to his mental and physical health. The district court found that Appellant did not show that Appellees had any personal involvement with his alleged constitutional deprivations, and that prison officials confined him to the infirmary for medical treatment.

"The Eighth Amendment . . . prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991) (citation omitted). However, the "Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To succeed on his conditions-of-confinement claim, Appellant must show that (1) his confinement, objectively speaking, resulted in a deprivation that was sufficiently serious; and (2) that prison officials acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A "sufficiently serious deprivation" is the denial of "the minimal civilized measure of life's necessities." *Id.* at 834. A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In *Hernandez v. Velasquez*, we upheld a grant of summary judgment in favor of prison officials that had placed a prisoner in lockdown and denied all outdoor and out-of-cell exercise privileges for thirteen months. 522 F.3d 556, 559 (5th Cir. 2008) (per curiam). Prison officials suspected he was a member of a gang that was planning a war with a rival gang and confined him to a 5' x 9' cell which he shared with another inmate. *Id.* We found that even if the prisoner had created a fact issue as to "muscle atrophy, stiffness, loss of range of motion,

7

and depression, there is nonetheless no indication these conditions posed a substantial risk of serious harm." *Id.* at 561.

We conclude that Appellant's situation is substantially similar to that of the prisoner in *Hernandez*. There, the prisoner could not leave his cell for thirteen months except for medical appointments, showers, and family visits. *Id.* at 559. The prisoner in *Hernandez* had less freedom to move than Appellant and was in lockdown for almost twice as long as Appellant was confined to the infirmary. We must therefore conclude, as we did in *Hernandez*, that Appellant has not raised a genuine issue as to whether he "suffered a 'serious illness or injury' sufficient to constitute an Eighth Amendment violation." *See id.* at 561 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)).

In *Hernandez*, we also found that to the extent that the prisoner claimed impairment of health, that he must "'clearly evince' the prisoner's serious medical need and the prison official's deliberate indifference to it." 522 F.3d at 561 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "Merely negligent diagnosis or treatment of a medical condition does not state a claim under the Eighth Amendment." *Id.* (citing *Estelle*, 429 U.S. at 106 (1976)).

Appellant does not raise a genuine issue of material fact as to Appellees' "deliberate indifference" to his medical needs. The evidence shows that he received regular treatment for his cancer and for depression. Dr. Reid regularly examined Appellant as evidenced by his reports in the record. In fact, the reports show that Dr. Reid attempted to improve Appellant's condition. Viewed in the light most favorable to Appellant, there is nothing in the record that suggests that Appellees acted with deliberate indifference to his medical needs.

## C.  ADA Claims

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  A disability is "a physical or mental impairment that substantially limits one or more major life activities; . . . a record of such an impairment; or . . . being regarding as having such an impairment."  42 U.S.C. § 12102(1).  In the ADA's implementing regulations, the Equal Employment Opportunity Commission provides a non-exhaustive list of "major life activities," including "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i).  We have previously explained that major life activities are "those activities that are of central importance to most people's everyday lives."  *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).

Appellant alleges that he had to use a wheelchair and had difficulty breathing, which necessitated his use of an oxygen tank.  Appellant's discharge summary indicates that the wheelchair was not "medically indicated or needed." Temporary conditions are generally not sufficient to rise to the level of disability under the ADA.  *See Burch v. Coca-Cola Co.*, 119 F.3d 305, 316 (5th Cir. 1997) ("Permanency, not frequency, is the touchstone of a substantially limiting impairment."); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (finding that a temporary ankle affliction did not constitute a disability even when it left some permanent impairment).  There is no evidence that Appellant's impairments in walking and breathing were anything but temporary and caused by his cancer and the treatment for the cancer he received while in

the infirmary. *See Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 191 (5th Cir. 1996) (finding that cancer and treatment for cancer did not substantially limit the major life activity of working). Therefore, we hold that the district court properly granted summary judgment on Appellant's ADA claims.[2]

## D. Retaliation

Appellant argues that the district court erred by granting summary judgment on his retaliation claim. Appellant claims that prison officials discriminated against him by denying him oxygen and medication, refusing to provide him with access to the shower, and coercing him into discharging himself from the infirmary. The district court found that Appellees could not have retaliated against Appellant because Appellees were only served with this lawsuit after they decided to discharge Appellant from the infirmary. The district court's finding is irrelevant: Appellant complained to Appellees and filed numerous grievances before he filed suit. We nonetheless affirm because Appellant has not shown that but for Appellees's retaliatory motive, he would not have been discharged.

Prison officials may not retaliate against an inmate for exercising his right of access to the courts or for complaining to a supervisor about guard misconduct. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). Filing grievances in accordance with prison procedure and complaining about treatment can be protected expression under the First Amendment. *See Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989). "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional

---

[2] Although Appellant argues that he had a "record of such an impairment" and that he was "regarded as having such impairment," *see* 42 U.S.C. § 12102(1)(B)–(C), he provides no support for this assertion and his argument is baseless in view of the record.

right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999) (per curiam). The plaintiff must establish that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods*, 60 F.3d at 1166. "Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (internal quotation omitted).

Appellant complains primarily of retaliatory actions allegedly taken by Nurse Beaty, who is not a party to this lawsuit. These alleged actions do not show direct evidence of retaliation by Appellees. Appellant's retaliation claim against Appellee Pollard, the practice manager of the infirmary wing, whom Appellant alleges forced him to check himself out of the infirmary, also fails. Appellant does not dispute that Dr. Reid recommended his discharge and that days later he was discharged. Appellant does not call the legitimacy of Dr. Reid's recommendation into question. Therefore, Appellant cannot show that "but for the retaliatory motive" he would not have been discharged from the infirmary. *See id.*

## E. Denial of Appellant's Motions

### 1. Motion for Leave to File a Supplemental Complaint

Appellant claims that the district court erred by denying his motion for leave to file a supplemental complaint. In that motion, Appellant sought to add Nurse Beaty, physician's assistant Randle, and correctional officers Brown and Salazar as defendants. The district court denied the motion because it found

that amending the complaint would prejudice Appellees by forcing them to litigate the case from the beginning.

The district court may permit a party to file a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." FED. R. CIV. P. 15(d). We review the denial of leave to file a supplemental complaint for abuse of discretion. *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir. 1998).

We find that the district court did not abuse its discretion by denying leave to supplement his complaint. Although Appellant's supplemental pleading included actions which occurred after he filed his original complaint, they involved claims against parties other than Appellees. The district court was within its discretion when it found that granting leave to supplement would delay the disposition of the claims against Appellees, thereby causing them prejudice. *See id.* ("Rule 15(d) is clear that the court *may* permit a supplemental pleading . . . .") (emphasis in original).

2.     Discovery Motions

Appellant also argues that the district court erred by denying his motion to compel production of documents. Appellant complains specifically of Appellees' failure to turn over a videotape from March 19, 2007, which Appellant claims would show his cell being shaken down by an infirmary wing officer, and that it would show guards forcing Appellant to drag himself and his property from the cell. Appellees made their initial disclosures under Federal Rule of Civil Procedure 26 after Appellant brought the motion to compel, but responded that the videotape was irrelevant because the court had denied Appellant leave to supplement the complaint. The district court denied Appellant's motion.

We review a district court's denial of a motion to compel for abuse of discretion. *Burns*, 158 F.3d at 343. The videotape would allegedly show events that transpired on March 19, 2007, two months after Appellant filed his complaint. The denial of the motion to compel is tied to the denial of leave to supplement Appellant's complaint; the videotape would be relevant only if the district court had granted leave to supplement. As discussed above, the district court did not abuse its discretion by denying leave to supplement the complaint. Therefore, the district court did not abuse its discretion by denying the motion to compel.

## III. CONCLUSION

For the above stated reasons, we find that Appellant did not raise a genuine issue of material fact on any of his claims. We therefore AFFIRM.

AFFIRMED.