# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 1, 2022

Lyle W. Cayce
Clerk

No. 21-30147

Renil Escobarrivera,

*Plaintiff—Appellant*,

*versus*

Antonio Whitaker, *Warden*, *Individual Capacity for Damages*, *Official Capacity for Injunctive Relief*; Tim Hooper, *Warden*, Louisiana State Penitentiary; Joseph LaMartinaire; Tim Delaney; James LeBlanc, *Warden*, *Individual Capacity for Damages*, *Official Capacity for Injunctive Relief*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:19-CV-498

Before Davis, Elrod, and Haynes, *Circuit Judges*.

Per Curiam:*

Proceeding pro se, Plaintiff-Appellant Renil Escobarrivera appeals the dismissal of his suit against Defendants-Appellees James LeBlanc, the

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-30147

secretary of the Louisiana Department of Corrections, warden Darrel Vannoy,[1] and assistant wardens Joseph LaMartinaire, Tim Delaney, and Antonio Whitaker. For the following reasons, we AFFIRM in part and VACATE and REMAND in part.

## I.   Background

Escobarrivera, who is confined at the Louisiana State Penitentiary in Angola, Louisiana, has been in closed custody restriction ("CCR") for four and a half years. Escobarrivera was initially placed in CCR in December 2017 after prison officials received an anonymous letter accusing him of planning to escape.

CCR at Angola is the effective equivalent of solitary confinement. According to Escobarrivera, inmates in CCR are confined to a one-person cell for twenty-three hours per day.[2] Unless otherwise restricted, inmates also receive one hour of yard time three days per week and two contact visits per month. Inmates in CCR are unable to attend religious services and have no access to email or educational programs.

As relevant to this appeal, Escobarrivera's initial complaint advanced three claims against Defendants. First, Escobarrivera asserted that his placement and continued confinement in CCR violates his Fourteenth Amendment due process rights. Second, Escobarrivera asserted that Defendant Whitaker retaliated against him by ordering his transfer to a different CCR unit after he complained about his continued confinement. Third, Escobarrivera alleged an equal protection violation premised on the

---

[1] Warden Darrel Vannoy has been replaced by Warden Tim Hooper.

[2] Defendants dispute this fact and instead assert that inmates in CCR receive two hours per day out of their cells. Because the distinction is immaterial to our analysis, we do not address this issue.

No. 21-30147

allegation that he has spent more time in CCR than inmates with more egregious rule violations and that release from solitary confinement is based solely on Defendants' personal feelings towards the inmates. Escobarrivera sought damages against Defendants in their individual capacities pursuant to 42 U.S.C. § 1983 as well as injunctive relief against Defendants in their official capacities.

After the district court dismissed several of Escobarrivera's claims for failure to state a claim, the parties filed opposing summary judgment motions regarding Escobarrivera's remaining causes of action. Adopting the magistrate judge's recommendation in full, the district court concluded that Defendants were entitled to qualified immunity on Escobarrivera's due process claim and accordingly granted their motion for summary judgment. The district court also dismissed Escobarrivera's retaliation and equal protection claims sua sponte for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e) and 1915A. Notably, the district court did not address Escobarrivera's claim for injunctive relief against Defendants in their official capacities but nonetheless entered a final judgment. This appeal timely followed.

## II.     Discussion

The district court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We discuss the district court's dismissal of Escobarrivera's retaliation and equal protection claims, the district court's qualified immunity determination and grant of summary judgment, and Escobarrivera's claim for injunctive relief, in turn, below.[3]

---

[3] At the outset, we note that Escobarrivera has abandoned many of his claims on appeal. Pro se briefs are afforded liberal construction, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), but pro se litigants are not "exempt . . . from compliance with relevant rules of procedural and substantive law," *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.

3

## A.    28 U.S.C. §§ 1915(e) and 1915A Dismissals

The district court dismissed Escobarrivera's retaliation and equal protection claims under 28 U.S.C. §§ 1915(e) and 1915A. Where, as here, a prisoner is proceeding in forma pauperis, §§ 1915(e) and 1915A require a court to dismiss an action or claim against a governmental entity or officer or employee of a governmental entity that is frivolous or malicious or fails to state a claim upon which relief may be granted. To determine whether a complaint fails to state a claim in this context, courts apply the same standard used for dismissal under Rule 12(b)(6). *Legate v. Livingston*, 822 F.3d 207, 209–10 (5th Cir. 2016). Accordingly, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We review a district court's dismissal under §§ 1915(e) and 1915A for failure to state a claim de novo. *Legate*, 822 F.3d at 209.

Escobarrivera's retaliation claim against Defendant Whitaker is premised on the allegation that Whitaker transferred him to a different CCR unit after Escobarrivera complained about his continued confinement. Escobarrivera, however, failed to allege any facts demonstrating that the transfer to a different CCR unit was more than a de minimis adverse act. *See Morris v. Powell*, 449 F.3d 682, 684–87 (5th Cir. 2006). For example, Escobarrivera failed to plead that the unit to which he was transferred was more dangerous or restrictive than his prior unit. Accordingly, without any

---

Nov. 1981) (per curiam). Because Escobarrivera does not sufficiently challenge the district court's holdings regarding his claims based on supervisory liability, his initial disciplinary hearing, or the Eighth Amendment, we deem those claims abandoned and accordingly do not address them.

facts supporting actual retaliation, the district court properly dismissed this claim.

Escobarrivera also advanced an equal protection claim, asserting that he has spent more time in CCR than other inmates and that release from solitary confinement is based solely on Defendants' favoritism (or lack thereof) towards those inmates. Because Escobarrivera failed to allege membership in a protected class, he must establish that he, as a "class of one," was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Given that prison officials are afforded wide deference in determining a prisoner's custodial status in order to maintain security, we conclude that Escobarrivera failed to plead sufficient facts to carry this heavy burden.[4] *See Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008) (per curiam). Escobarrivera's equal protection claim was accordingly properly dismissed.

## B.    Summary Judgment

The district court concluded that Defendants were entitled to qualified immunity on Escobarrivera's claim that his continued confinement violates his Fourteenth Amendment due process rights, and it accordingly granted summary judgment in favor of Defendants. Specifically, the district court held that Escobarrivera's alleged liberty interest was "not clearly established based on the specific facts" alleged. We examine that analysis.

---

[4] The magistrate judge noted that several district courts have held "class of one" claims are largely, if not entirely, unavailable in the context of prison disciplinary proceedings. Because we conclude that Escobarrivera failed to carry the heavy burden of negating any rational basis for his CCR confinement, we do not address this observation.

We review "a district court's grant of summary judgment de novo, applying the same standards as the trial court." *Griffin v. UPS, Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

"A good-faith assertion of qualified immunity," however, "alters the usual summary judgment burden of proof." *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (internal quotation marks and citation omitted). In those situations, once the defendants raise the defense, the burden shifts to the plaintiff to raise a material fact issue that would show the absence of qualified immunity. *Id.*

Our qualified immunity analysis is a two-part process: (1) we ask whether the alleged conduct has violated a federal right, *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc); and (2) we consider "whether the right in question was clearly established at the time of the alleged violation" such that the official was on notice of the unlawfulness of the conduct, *id.* (internal quotation marks and citation omitted). We need not decide the two questions in order—we may decide the issue solely on the basis that a right was not clearly established. *Pearson v. Callahan*, 555 U.S. 223, 236–37, 243 (2009). With this framework in mind, we turn to Escobarrivera's due process claim.

"[T]he Due Process Clause does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). Therefore, we must first consider whether Escobarrivera has been deprived of a liberty or property interest and then examine whether the procedures related to that deprivation were "constitutionally sufficient." *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010) (quotation omitted). Escobarrivera argues that he

has a clearly established liberty interest based on his continued confinement.[5] We disagree.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that a prisoner's liberty interests "will be generally limited to freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Accordingly, and because we afford wide deference to prison officials, we have consistently held that "generally speaking, a prisoner has no liberty interest in his custodial classification." *Hernandez*, 522 F.3d at 562.

Whether a prisoner has raised a valid liberty interest as a result of continued solitary confinement turns on whether that custodial status "demonstrates extraordinary circumstances or, in other words, an atypical and significant hardship." *Wilkerson v. Goodwin*, 774 F.3d 845, 853 (5th Cir. 2014) (internal quotation marks and citation omitted). To make that determination, we evaluate "the nature of the more-restrictive confinement *and* its duration in relation to prison norms." *Id.* (quotation omitted). These two factors are considered on a sliding scale. *See id.* at 855–56. "[T]ruly onerous conditions for a brief period of time may not be atypical; less onerous conditions for an extended period of time may be." *Bailey v. Fisher*, 647 F. App'x 472, 476 (5th Cir. 2016) (per curiam).

---

[5] Escobarrivera also claims a liberty interest based on his inability to seek a pardon while in CCR and a property interest based on his inability to earn incentive pay while in CCR. Neither assertion is availing. The speculative nature of an early release by pardon does not involve a protected liberty interest, *cf. Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000) (holding that because consideration for parole in Texas is entirely speculative, it cannot support a constitutional claim), and "[p]risoners have no constitutional right to be paid for work performed in prison," *Rochon v. La. State Penitentiary Inmate Acct.*, 880 F.2d 845, 846 (5th Cir. 1989).

We begin with the nature of confinement. In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court articulated conditions of confinement sufficiently severe to create a clearly established due process violation. *Id.* at 214–15. The *Wilkinson* Court evaluated an inmate's confinement at the Ohio Supermax facility, noting that his segregation denied him of almost all human contact. *Id.* at 214. His cell door was made of solid metal, preventing him from conversing with others; his cell light could be dimmed, but was on for twenty-four hours a day; and he could exercise one hour per day, but only while isolated and in a small indoor room. *Id.* Placement in the facility was indefinite and disqualified inmates from otherwise eligible parole considerations. *Id.* at 214–15.

In *Bailey*, we applied *Wilkinson* and concluded that the inmate's confinement was similarly severe. 647 F. App'x at 474–75. The inmate in *Bailey* was on lockdown between twenty-three and twenty-four hours a day in a one-person cell with a solid steel door. *Id.* When the inmate was permitted to exercise, he remained isolated from other prisoners; visitation and telephone use were either non-existent or rare; and the inmate had no access to any privileges or programming, such as religious gatherings, educational programs, entertainment, canteen, or packages. *Id.* at 475. Moreover, any time the inmate left his cell he was handcuffed through a mailbox-like structure and strip searched. *Id.*

We conclude Escobarrivera has failed to create a fact issue that his confinement as of the date of final judgment in the district court rises to the level of severity articulated in *Wilkinson* and *Bailey*. We recognize that Escobarrivera is confined for twenty-three hours (or at least twenty-two hours) a day in a cell by himself, eats his meals alone, is prevented from attending church services, and his confinement is allegedly "indefinite." But important to the Court in *Wilkinson* was the "depriv[ation] of almost any environmental or sensory stimuli and of almost all human contact." 545 U.S.

at 214. Escobarrivera's confinement does not amount to such a deprivation. Escobarrivera's cell has bars as opposed to a steel door, allowing him the opportunity to communicate with other inmates. He can roam the hall and interact with others during his hour of release; he receives three additional one-hour sessions a week outside; and he has access to visitation twice a month. Accordingly, taking his facts as alleged as true, we cannot conclude that Escobarrivera's conditions of confinement alone are "atypical and significant." *See Sandin*, 515 U.S. at 484.

We now turn to the duration of Escobarrivera's confinement. Confinement in less severe conditions may still give rise to a protected liberty interest if the confinement's duration is excessive. *Wilkerson*, 774 F.3d at 855–56. In *Wilkerson*, for example, we considered a thirty-nine-year confinement and concluded that such an "extraordinary duration" diluted the materiality of the less severe confinement conditions. *Id.* The duration of Escobarrivera's confinement—which was three years and three months when the district court entered summary judgment and is now four years and six months—is significantly shorter than the duration at issue in *Wilkerson*. Therefore, Escobarrivera's length of confinement does not, at least at this point, tip the scale towards severity.

Moreover, we have noted that a period of eight years in solitary confinement with no prospect of immediate release in the near future is sufficient to give rise to a liberty interest, but a period of two and one-half years in confinement is not. *Id.* at 855 (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). Escobarrivera's confinement duration is closer to the two-and-a-half-year mark that we have deemed insufficient to establish a

No. 21-30147

liberty interest than it is to the eight-year mark we have deemed sufficient. Therefore, Escobarrivera's duration of confinement is also not atypical.[6]

In sum, considering the conditions of Escobarrivera's confinement coupled with its duration, we conclude that Escobarrivera has not articulated a clearly established due process liberty interest at this point. Because Escobarrivera's due process rights in these circumstances were not "so well defined" that a "reasonable officer" would understand his conduct to be unlawful, *see Cole*, 935 F.3d at 451, we affirm the district court's grant of summary judgment in favor of Defendants as to the claims asserted against them in their individual capacities as of the date of the final judgment in the district court. That said, this summary judgment affirmance does not preclude what Escobarrivera may be able to assert as time continues.

## C.    Injunctive Relief

Escobarrivera's complaint asserted claims against Defendants for damages in their individual capacities and for injunctive relief in their official capacities. As to the injunctive relief, Escobarrivera sought release from solitary confinement and placement in the general population.

In their motion to dismiss, Defendants asserted that Escobarrivera's claims against them in their official capacities were barred by sovereign immunity. In its report and recommendation on the motion to dismiss, the magistrate judge did not address Defendants' sovereign immunity argument. The district court subsequently granted Defendants' summary judgment motion on the basis of qualified immunity and dismissed Escobarrivera's entire complaint with prejudice.

---

[6] In *Bailey*, we indicated that a period of five years in solitary confinement might be enough to implicate a protected liberty interest. 647 F. App'x at 477. Because he has not yet reached that number, we need not address that case further at this point.

10

No. 21-30147

Qualified immunity, however, does not bear on Escobarrivera's entitlement to injunctive relief. "Absolute and qualified immunity protect only *individuals* from claims for *damages*; they do not bar official-capacity claims or claims for injunctive relief." *Singleton v. Cannizzaro*, 956 F.3d 773, 778 n.3 (5th Cir. 2020). Neither the magistrate judge nor the district court independently addressed Escobarrivera's official capacity claims before dismissing the complaint.[7]

The district court erred by failing to consider Escobarrivera's official capacity claims against Defendants. At the pleading stage, Escobarrivera asserted sufficient factual allegations supporting an official capacity due process claim. He alleged that he is denied meaningful review of his custodial status because the hearings held regarding his CCR classification are essentially shams. Specifically, Escobarrivera asserted that Defendants contribute to the denial of meaningful review and due process by, inter alia, basing CCR release decisions "solely on their personal like or dislike of a prisoner." Per Escobarrivera, Defendant LeBlanc similarly contributes to the denial of review by failing to establish "a set criteria for CCR release," which creates a "biased and unjust" release system. On those facts, Escobarrivera has established that his denial of procedural due process is fairly traceable to Defendants and his requested relief—ordering Defendants

---

[7] As noted above, a party must "press and not merely intimate" its claims to avoid waiver, *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1326–27 (5th Cir. 1994), but "we construe briefs of *pro se* litigants liberally," applying "less stringent standards," *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 n.10 (5th Cir. 2017). In his brief on appeal, Escobarrivera "asks this court to order his release into general population." He also asserts that he will never "have a real review" of his confinement "unless a court makes Louisiana start conducting real board hearings." Affording Escobarrivera the benefit of liberal construction, we conclude that Escobarrivera's claim for injunctive relief is adequately preserved on appeal.

to afford him the process he is due to determine release from CCR—would redress that injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Moreover, Escobarrivera's claims likely clear the state sovereign immunity jurisdictional bar. State sovereign immunity precludes "private suits against nonconsenting states in federal court," *see City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019), and where a suit is effectively against a state, state officials enjoy the same sovereign immunity, *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1124 (2021). *Ex parte Young*, 209 U.S. 123 (1908), however, allows suits for prospective injunctive relief or declaratory relief against a state official acting in violation of federal law if the state official has a sufficient connection to enforcement of the allegedly unconstitutional law. *Id.* at 157. Because there is significant overlap between the Article III standing and the *Ex parte Young* inquiries, the standing analysis can inform the state sovereign immunity analysis. *See City of Austin*, 943 F.3d at 1002.

Here, each of the named Defendants has the authority to compel or constrain Escobarrivera's conditions of confinement by maintaining his placement in CCR. *See Tex. Democratic Party v. Hughs*, 997 F.3d 288, 290–91 (5th Cir. 2021). "[G]enerally all institutional litigation involving state prisons, such as this case, is brought under the *Ex parte Young* exception." *Hope v. Harris*, 861 F. App'x 571, 578 (5th Cir. 2021) (per curiam) (internal quotation marks and citation omitted), *petition for cert. filed*, No. 21-1065 (U.S. Jan. 28, 2022). Accordingly, though Escobarrivera cannot seek monetary damages from Defendants in their official capacities, state sovereign immunity does not bar Escobarrivera's official capacity claims for injunctive relief. *See Abbott*, 978 F.3d at 179.

That said, we are "a court of review, not of first view." *See Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005). We accordingly vacate the district

No. 21-30147

court's order dismissing Escobarrivera's injunctive relief claim against Defendants in their official capacities and remand to the district court to consider the claim in the first instance.

### III.    Conclusion

For the foregoing reasons, we AFFIRM the district court's dismissal of Escobarrivera's equal protection and retaliation claims and the district court's grant of summary judgment in favor of Defendants as to Escobarrivera's individual capacity claims. We VACATE the district court's grant of summary judgment in favor of Defendants as to Escobarrivera's official capacity injunctive relief claim and REMAND for further proceedings consistent with this opinion.[8] We ORDER the district court to grant Escobarrivera's request for appointment of counsel.

---

[8]While the partial concurrence and partial dissent posits that we "take[] [*Wilkerson*] to use duration of confinement alone to determine whether constitutional due process protections must be afforded," as is discussed above, we only reach the question of the duration of Escobarrivera's confinement after holistically considering the nature and severity of that confinement. Partial Concurrence and Partial Dissent at 3, 5. In addition, as we discuss in footnote six, the five year period of solitary confinement mentioned in *Bailey* has not yet been matched in this case. Therefore, based upon both the duration and nature of Escobarrivera's confinement, we conclude that Escobarrivera did not create a fact issue as to his confinement as of the date of the district court's final judgment. However, given the passage of time in this case, the district court can and should consider the current circumstances of Escobarrivera's confinement, including the duration of his confinement, in its further proceedings as to the injunctive relief claim. In addition, in such proceedings, the district court should reconsider the injunctive relief claim without respect to qualified immunity considerations. Finally, the district court should allow appointed counsel for Escobarrivera an opportunity to file an amended complaint on the injunctive relief claim that accounts for all conditions relevant to his incarceration.

No. 21-30147

Jennifer Walker Elrod, *Circuit Judge*, concurring[1] in part and dissenting in part:

Mr. Escobarrivera has been in closed custody restriction, better known as solitary confinement, since December of 2017. The parties quibble over whether he is permitted to leave his cell for two or only one hour each day. Regardless, he spends most of his time isolated in an eight-by-eight-foot room. He is permitted one hour of outdoor exercise in a slightly larger "dog cage," but is limited to three such sessions per week. He is disqualified from participating in religious and educational programming. While he is technically permitted two contact visits each month, he is often unable to secure the necessary approvals—he tells us that he has not had a single visitor in over a year. He has not been given any indication of when, if ever, he will be transferred back to the general population.

None of this factored into the district court's conclusion that Mr. Escobarrivera lacks a sufficient liberty interest in avoiding closed custody restriction to invoke the constitutional floor of procedural due process protections—or, at least, that any liberty interest he might have is not well-enough established to put state officials on notice that those protections have been triggered. Instead, brushing aside other considerations, the district court held that Mr. Escobarrivera's stint in solitary confinement has simply been too short to raise constitutional concern. At the time, Mr. Escobarrivera had been subject to restrictive conditions for "just over three years," and there was no authority on hand in which a prisoner had successfully claimed a liberty interest after three years in solitary confinement. *Escobarrivera v. Vannoy*, No. 3:19-CV-00498, 2021 WL 943106, at *1 (M.D. La. Mar. 12,

---

[1] I agree with the majority opinion that the district court was correct to dismiss Mr. Escobarrivera's retaliation and equal protection claims. I also agree that the district court erred by failing to consider Mr. Escobarrivera's official capacity claims.

No. 21-30147

2021).  According to the district court, this "lack of clear guidance regarding terms equivalent to Plaintiff's term is dispositive, and entitle[d] Defendants to qualified immunity."  *Id.*

There are two problems with this holding.  First, prior decisions do not articulate a bright-line test that shackles a prisoner's liberty interest solely to the duration of his confinement.  Our precedents sensibly treat duration as but one consideration among many.  Second, the district court's invocation of qualified immunity, to borrow a phrase, "smacks of unqualified impunity."  *Zadeh v. Robinson*, 928 F.3d 457, 479 (5th Cir. 2019) (Willett, J., concurring in part).  "The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'"  *Wilkerson v. Goodwin*, 774 F.3d 845, 857 (5th Cir. 2014) (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004)).  I would hold that they did so here.

Far from treating duration as dispositive, the Supreme Court has looked to the nature of the conditions of confinement as the "touchstone" of the liberty-interest analysis.  *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005).  Courts are to determine whether a prisoner's conditions of confinement impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  Duration is certainly relevant to that assessment.  And in declining to recognize a liberty interest in an early case, the Supreme Court relied heavily on the fact that the plaintiff had only been subjected to a 30-day period of disciplinary confinement, reasoning that "significant amounts of 'lockdown time'" are an ordinary part of prison life and do "not work a major disruption in [the inmate's] environment."  *Sandin*, 515 U.S. at 486–87.  But duration is clearly not everything.  Indeed, *Wilkinson*, the Supreme Court's most recent word on this issue, was a class action.  The various plaintiffs

No. 21-30147

involved had doubtless spent different—perhaps vastly different—amounts of time under restrictive conditions.

Simply put, there is no minimum threshold duration requirement. Following *Wilkinson* and drawing on the practice of our sister circuits, we articulated a holistic approach in *Wilkerson*, 774 F.3d 845. We instructed that courts should consider the combination of the "duration of the solitary confinement, the severity of the restrictions, and their effectively indefinite nature." 774 F.3d at 855. The majority opinion misreads *Wilkerson*, therefore, when it takes it to use duration of confinement alone to determine whether constitutional due process protections must be afforded. In the majority opinion's view, *Wilkerson* held that two and a half years is simply not enough to give rise to a liberty interest, but eight years is sufficient. It apparently relies on *Wilkerson*'s overview of sister-circuit decisions and *Wilkerson*'s observation that the "duration in segregated confinement that courts have found does not give rise to a liberty interest range up to two and one-half years." *Id*. at 855. But this overview was used only to stress the "extraordinary" nature of the thirty-nine years of confinement at issue in that case. *Id*. ("We need not dwell on duration." *Id*.). It does nothing to disavow or amend the holistic approach that had just been put forward.[2] And

---

[2] The opinions cited by *Wilkerson* do not treat duration as dispositive either. *See Hernandez v. Velasquez*, 522 F.3d 556, 563 (5th Cir. 2008) (reviewing plaintiff's conditions and concluding that "[c]ases where segregated confinement is sufficiently 'atypical' to implicate a due process liberty interest involve circumstances much harsher than those presented here"); *Jones v. Baker*, 155 F.3d 810, 813 (6th Cir. 1998) (describing two and a half years as atypical but nevertheless holding that the particular "conditions of plaintiff's confinement" were justified and did "not rise to an 'atypical and significant' hardship"); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3rd Cir. 1997) (reviewing plaintiff's conditions and concluding that "it is not extraordinary for inmates in a myriad of circumstances to find themselves exposed to the conditions to which [plaintiff] was subjected").

16

it certainly does not categorically deem insufficient any claim to a liberty interest that does not meet a minimum threshold period of confinement.

Our sister circuits continue to treat duration as simply one factor among others. The Seventh Circuit, in fact, recently rejected a "presumptive minimum" of six months as inconsistent with case law across the federal courts, noting that "[a] considerably shorter period of segregation may, depending on the conditions of confinement and on any additional punishments, establish a violation." *Kervin v. Barnes*, 787 F.3d 833, 836–37 (7th Cir. 2015) (citing examples from the Second Circuit (77 days), Third Circuit (90 days), and Tenth Circuit (75 days)).

Analyzed under the proper test articulated in *Wilkinson* and *Wilkerson*, and employed by our sister circuits, Mr. Escobarrivera's conditions plainly implicate a clearly established liberty interest. In *Wilkerson* we zeroed-in on the combination of the plaintiff's "23-hour-a-day in-cell confinement, limited physical exercise, limited human contact, and effectively indefinite placement" to determine that a clearly established liberty interest was implicated. 774 F.3d at 858. It is undisputed that all of these factors are present here.

The district court's contrary conclusion follows from its error in treating the "lack of clear guidance regarding terms equivalent to Plaintiff's term" as the beginning and the end of the qualified immunity analysis. *Escobarrivera*, 2021 WL 843106, at *1. As we held in *Wilkerson*, a liberty interest can be clearly established despite "some distinctions between the conditions" that have been held to implicate a liberty interest in previous cases. 774 F.3d at 855. Thus, the district court was obliged to fully consider all of Mr. Escobarrivera's conditions of confinement to determine whether there were "material and substantial similarities" with conditions that have previously been found to implicate a liberty interest. *Id.* A difference in

duration alone does not preclude a finding of clearly established law. *See id.* at 858 (concluding that plaintiff's conditions of confinement implicate a clearly established liberty interest and then noting that this conclusion is "*cemented* by the unprecedented duration of [the prisoner's] incarceration" (emphasis added)).

Moreover, even assuming *arguendo* that claims like Mr. Escobarrivera's cannot be brought until a prisoner has spent a minimum period in solitary confinement, Mr. Escobarrivera has satisfied that prerequisite. As noted, the majority opinion identifies eight years with no prospect of immediate release as "sufficient," but two and a half years as "not." *Supra* p. 9. Mr. Escobarrivera is now approaching five years in solitary confinement with no indication of when or how he may ever be released. I would hold that five years is enough, as foreshadowed by our decision in *Bailey v. Fisher*, 647 F. App'x 472 (5th Cir. 2016). The plaintiff in *Bailey* likewise sought judicial review of his placement in solitary confinement. *Id.* at 473. But it was not clear from the record how long he had been in isolation, prompting the panel to remand to the district court to determine whether the plaintiff was still being held in solitary confinement. *Id.* at 477. In doing so, the panel noted that if the plaintiff *was* still in solitary confinement, "he has been isolated for over five years." *Id.* If five years of confinement were insufficient to trigger constitutional due process protections, there would be no need for a remand.

Simply put, five years in solitary confinement with no path forward to release is sufficient to trigger constitutional due process protections.

I respectfully dissent in part and would remand this claim for further consideration in the district court.