# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 29, 2025

Lyle W. Cayce
Clerk

_____

No. 24-30537

_____

Glenn Damond,

*Plaintiff—Appellant*,

*versus*

City of Alexandria; Mark Wood, *in his individual capacity & official capacity*; Colin Radar, *in his individual capacity & official capacity*; Ronald Goudeau, *in his individual capacity & official capacity*; Chris Winegeart, *in his Individual Capacity*; John Doe; Felicia Aaron, *in her individual capacity*; C. Skinner, *in her individual capacity*; Nurse Assistant Lauren, *in her individual capacity*; Nurse Assistant Wendy, *in her individual capacity*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:23-CV-1811

_____

Before Higginson, Ho, and Wilson, *Circuit Judges*.

Per Curiam:[*]

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30537

Glenn Damond, a former prisoner, filed this civil suit pro se under 42 U.S.C. § 1983, alleging various violations of federal and state law. The magistrate judge recommended dismissal of his federal claims with prejudice and state claims without prejudice. The district court reviewed Damond's complaint de novo and agreed. We affirm.

**I.**

Damond alleges that in September 2022 he began to experience mouth pain, impacting his ability to sleep, eat, and brush his teeth. He complained to staff medical assistants, who "mis-diagnosis" [sic] his pain and issued him pain medication and salt water to rinse his mouth. Damond's pain continued. So on October 17 he filed a medical request, and staff referred him to an outside dentist.

As he awaited his dentist appointment, Damond filed successive medical requests. After each request, he would be given pain medication or some other medicine to respond to the pain and other issues he was experiencing. But each time, staff denied him the antibiotics, a soft diet, or prescription pain pills he requested as they were unable to prescribe those treatments without approval.

In late November, Damond began to complain about chest pain and "extreme fears of dying." Nurses responded to his complaint, checked his vitals, and instructed Damond to take a sick day, presumably from his prison job.

On November 28, Damond was taken to Tulane Medical Center for a dental appointment, diagnosed with periodontal disease, and prescribed mouthwash and toothpaste. But he was still denied a soft diet and antibiotics. He then received a follow-up cleaning on December 12, 2022, and was prescribed pain pills and antibiotics.

Following this ordeal, Damond began a medical grievance procedure. He believes this triggered a conspiracy by Defendants to punish him by subjecting him to thirty-three days of solitary confinement. But he also admits that he had requested to be placed in solitary confinement months earlier.

While in solitary confinement, Damond alleges that he was isolated for twenty-three hours a day and lost most privileges. He experienced nausea, back pain, rectal soreness, and anxiety. He received medication for nausea, cold medicine, and other treatment for his body pains. Even so, he alleges that he was denied adequate medical care, including the denial of prescribed medication for his rectum. That said, he admits that each of his ailments was either eventually addressed by staff or healed on its own. He also experienced unusual smells coming through his cell vents, which he believes were caused by Defendants pumping poisonous gas into his cell. Damond further alleges that he was transferred to Catahoula Correctional Center, "a place known for many stabbings[,]" because of his medical grievances.

After his release, Damond filed this lawsuit, seeking over $10 billion in damages.

Because Damond was proceeding *in forma pauperis*, the magistrate judge conducted a preliminary screening of his complaint under 28 U.S.C. § 1915(e)(2). Under § 1915(e)(2), a court "shall dismiss [a] case at any time" if the court determines the allegation is untrue or that the action or appeal is frivolous, malicious, fails to state a claim on which relief can be granted, or seeks monetary damages from an immune defendant.

Upon review, the magistrate judge concluded that Damond had failed to state a claim on which relief can be granted and issued a report and

recommendation that Damond's federal claims be dismissed with prejudice and the state claims dismissed without prejudice under § 1915(e)(2)(b).

After conducting its own de novo review, the district court agreed and dismissed Damond's federal claims with prejudice and his state claims without prejudice under § 1915(e)(2)(b).  Damond appealed.

## II.

Damond challenges the district court's dismissal of his federal and state claims.  We review a § 1915(e)(2) dismissal de novo and apply the same standard of review used for a Rule 12(b)(6) motion.  *DeMoss v. Crain*, 636 F.3d 145, 152 (5th Cir. 2011).  Dismissal is appropriate when a complaint fails "to state a claim to relief that is plausible on its face."  *Id.* (citation omitted). In reviewing these complaints, we can draw a reasonable inference from the facts alleged that the defendant may be liable for the misconduct.  *See id.* That said, "[w]e do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."  *DeMarco v. Davis*, 914 F.3d 383, 386–87 (5th Cir. 2019) (cleaned up).

In his complaint, Damond alleges violations of the Eighth and Fourteenth Amendments arising from the medical and dental care he received, as well as the conditions of his confinement.  He also raises retaliation claims, constitutional challenges against prison policies, and supervisory liability claims.  We take each in turn.

Damond raises two potential claims under the Eighth Amendment: (1) deliberate indifference to his medical and dental needs, and (2) unconstitutional conditions of his confinement.

Prisoners state a cognizable injury under the Eighth Amendment when they demonstrate that a prison official was deliberately indifferent to their medical needs.  *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

"A prison official acts with deliberate indifference only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citation omitted).

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (citation omitted). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346.

Damond's complaints largely amount to disagreements with the timing and nature of the medical care he received. Even if these allegations constitute negligence, they still fall short of the extremely high standard of deliberate indifference.

His conditions-of-confinement allegations fare no better. Damond alleges that he was placed in solitary confinement for thirty-three days, during which he was confined for twenty-three hours each day. He further claims a loss of privileges, exposure to odors he believes resulted from poisonous gas being pumped into his cell, and physical discomfort from the mattress he was provided.

To state an Eighth Amendment challenge to the conditions of confinement, the prisoner must satisfy two prongs. First, the prisoner must show that he faced "conditions so dire as to deprive [him] of the minimal civilized measure of life's necessities." *LaVergne v. Stutes*, 82 F.4th 433, 437 (5th Cir. 2023) (citation omitted). And second, he must show "that the responsible prison officials were deliberately indifferent to [his] health or safety." *Id.* But conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true. *See DeMarco*, 914 F.3d at 386–87.

Damond makes an unwarranted factual inference that the smells from his vent were caused by prison officials pumping poisonous gas into his cell. So we disregard it. *See id.*

As to the rest of his allegations, even if they could satisfy the first prong, he still fails to meet the extremely high standard of deliberate indifference. *See Domino*, 239 F.3d at 756 (citation omitted).

Accordingly, the district court properly dismissed these claims.

Next, Damond argues that the conditions of his segregated confinement violated the Due Process Clause of the Fourteenth Amendment. Restrictive confinement is grounds for a due process claim only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *LaVergne*, 82 F.4th at 436 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

To make that determination, we first evaluate "the nature of the more-restrictive confinement" and second, "its duration in relation to prison norms." *Wilkerson v. Goodwin*, 774 F.3d 845, 853 (5th Cir. 2014) (citation omitted). These factors are considered on a sliding scale, as "truly onerous conditions for a brief period of time may not be atypical; less onerous conditions for an extended period of time may be." *Bailey v. Fisher*, 647 F. App'x 472, 476 (5th Cir. 2016).

We take the conditions of confinement first. The Supreme Court in *Wilkinson v. Austin*, 545 U.S. 209, 214 (2005), held that conditions of confinement violate the Due Process Clause when they amount to the denial of "almost any environmental or sensory stimuli and of almost all human contact." In *Wilkinson*, the prisoner was disqualified from parole, prevented from communicating with others, his cell light could be dimmed but was on twenty-four hours a day, and he could exercise one hour per day, but only while isolated and in a small room. *Id.*

Here, Damond alleges that during his thirty-three-day solitary confinement he was required to spend twenty-three hours a day in a small cell and lost privileges and liberties enjoyed by other prisoners, including the ability to exercise, attend classes, watch television, research his legal cases, associate with other prisoners, engage in outdoor recreation, attend meals with other prisoners, and use a normal shower. But he was permitted to talk with corrections officers and medical staff, file medical requests, and receive medical care.

While restrictive, solitary confinement is what Damond requested. Furthermore, these conditions do not rise to those in *Wilkinson* or the other cases where we've found unacceptable conditions existed. *See, e.g.*, *Wilkerson*, 774 F.3d at 849, 855 (inmates in solitary confinement faced restrictions on "personal property, reading materials, access to legal resources, work, and visitation rights," and could not "attend religious ceremonies" or "take advantage of educational opportunities [and] training" available to other inmates).

Unlike the plaintiff in *Wilkerson*, Damond was not denied personal belongings. Nor was he denied access to legal resources. He also requested and received medical treatment from prison staff during that time. In sum, he was not denied "almost any environmental or sensory stimuli [or denied] almost all human contact." *Wilkinson*, 545 U.S. at 214.

But even if Damond's confinement was like that of *Wilkinson* or *Wilkerson*, his confinement was limited to thirty-three days. Our court has stated that even when conditions are very similar to the unconstitutional conditions in *Wilkinson* and *Wilkerson*, petitioners likely "fail[] to present a claim of constitutional proportions" when the duration of confinement reaches 18–19 months. *Bailey*, 647 F. App'x at 473, 476 (citation omitted).

If 18–19 months in conditions nearly identical to those in *Wilkinson* and *Wilkerson* present no claim, then Damond's thirty-three-day confinement certainly does not.

Damond next argues that prison officials unconstitutionally retaliated against him by placing him in solitary confinement, pumping poison gas into his air vents, and transferring him to Catahoula Correctional Center.

"To state a valid claim for retaliation under [§] 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999). Inmates must allege more than their personal belief that they are a victim of retaliation. *Id.* Conclusory statements warrant dismissal. *Id.*

Here, Damond does no more than speculate that Defendants conspired to segregate, poison, and transfer him in response to his medical complaints. These conclusory statements cannot prevent dismissal.

Furthermore, Damond requested to be placed in solitary confinement months earlier. He cannot now allege that he suffered retaliation from the confinement he asked for. *Cf. Ackermann v. United States*, 340 U.S. 193, 198 (1950) (stating that plaintiffs "are not to be relieved from" their "free, calculated, deliberate choices"); *State v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021) (citation omitted) (a party cannot raise constitutional complaints when the "harm complained of is self-inflicted").

And the conditions of his solitary confinement were constitutional. So nothing unconstitutional was done here.

Damond's remaining *Monell* and supervisory claims similarly fail as nothing that he alleges constitutes the deprivation of a federal right. *See*

*Henderson v. Harris Cnty., Tex.*, 51 F.4th 125, 130–31 (5th Cir. 2022); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).

In sum, the district court did not err in dismissing Damond's federal claims with prejudice under § 1915(e)(2). And because Damond has no federal claims, the district court properly dismissed his state law claims without prejudice for lack of supplemental jurisdiction. *See* 28 U.S.C. § 1367.

\* \* \*

We affirm.